UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 24-cr-553 (APM) |
| : | |
| ANTHONY BRASSELL, : | |
| : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, hereby, submits this memorandum in support of its recommendation for the sentencing of the defendant.

**I.   Introduction**

The defendant manufactured 35 machinegun conversion devices ("MCDs"). This a very serious offense. Accordingly, the Court should impose a sentence at the top of the Guidelines Range.

**II.   Procedural Posture**

On July 11, 2025, defendant pleaded guilty to Count Two of the Superseding Indictment [ECF No. 19], charging him with Unlawful Transfer and Possession of a Machinegun, in violation of 18 U.S.C. §§ 922 (o) and 2.

**III.   Defendant's Criminal Conduct**

On the evening of October 2, 2024, co-defendant was stopped while driving a Dodge Durango. The co-defendant was the vehicle's sole occupant. MPD officers noticed a clear plastic bag in plain view on the back passenger side floor, which appeared to have firearms accessories in it. Officers then removed the bag from the car and determined that it appeared to

contain dozens of machinegun conversion devices ("MCDs") or components, in three separate smaller bags inside a larger outer bag.

Subsequent ATF testing determined that the bag of suspected MCDs and components contained 62 individual pieces, amounting to a total of 35 complete MCDs. The pieces were categorized as follows:

- a. (6) "Glock Switch"-type MCDs, each comprised of three separate parts for a total of 18 parts;

- b. (8) "Glock Chip"-type Glock MCDs, each comprised of a single piece for a total of 8 parts;

- c. (21) drop-in AR auto sear-type MCDs in two sizes, each comprised of a single piece for a total of 21 parts; and

- d. One firearm (non-MCD) component comprised of a single part.

ATF's Firearms and Ammunition Technology Division conducted test fires of the 35 MCDs and determined that all the MCDs were "'machinegun[s]' as defined" in the National Firearms Act of 1934, 26 U.S.C. § 5845(b).

Defendant's cellular telephone was searched, and numerous incriminating items were recovered. For example, defendant sent and received using the encrypted application Signal. Certain unencrypted text/SMS messages and FaceTime records between the co-defendant and an individual saved in his phone as "Tj," matched messages sent between the co-defendant and an individual with username "Mike Jones" on Signal, in a way that strongly indicated that "Tj" and "Mike Jones" were the same person. "Mike. Jones" was in fact an alias for the defendant, Anthony Brassell, Jr.

One such message, sent from the defendant to co-defendant on September 27, 2024, included a photo of the defendant in a vehicle with a tray of 3-D printed MCDs on his lap and

2

holding several MCDs in his hand. One of the MCDs on the defendant's hand appeared identical to the Glock Switch-type MCDs seized from the co-defendant's vehicle and included the same "Not ATF Guy" image.

Messages between the co-defendant and the defendant indicate that they met in the late evening of October 1, 2024. Law enforcement analysis of court-authorized location data attributed to both the defendant's and co-defendant's telephones confirmed that the telephones were indeed in the same area in the late evening of October 1, 2024. The defendant was arrested with what appear to be the same MCDs in his vehicle the next day, October 2, 2024.

On December 9, 2024, law enforcement executed several court-authorized search warrants, including a search warrant of the defendant's residence. During the search of defendant's residence, law enforcement recovered an empty Glock box, firearm ammunition, firearms accessories, several firearms magazines, and suspected narcotics packaging.

Additionally, during that search, the defendant stated that he had in fact supplied the MCDs to the co-defendant as part of a plan they had to further distribute and sell the MCDs to other people and share the proceeds.

The defendant's electronic information revealed the presence of Computer Aided Design ("CAD") files showing how to 3-D print various types of MCDs, including Glock Switches with the same distinctive "Not ATF Guy" image. The defendant's Instagram account revealed that, prior to the co-defendant's arrest, the defendant posted multiple messages in which he advertised MCDs for sale. Additionally, the defendant referred to MCDs as "buttons" and discussed the distribution of MCDs with multiple other Instagram users. In one such message, the defendant offered to sell "buttons" for $100 to $300 "depending on what ones they is."

3

## IV. Statutory Penalties

The penalties for the offense of conviction, Unlawful Transfer and Possession of a Machinegun, are as follows:

1. a maximum term of imprisonment not to exceed ten years;

2. a fine not to exceed $250,000;

3. a term of supervised release of not more than three years; and

4. a special assessment of $100.

18 U.S.C. §§ 922(o). United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of for imprisonment and any term of supervised release and/or probation.

## V. Sentencing Guidelines Calculation

The Supreme Court has instructed that the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 45 (2007). "As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. As "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," the Guidelines are the "starting point and the initial benchmark" for sentencing. *Id.* at 46; *United States v. Khatallah*, 41 F.4th 608, 644 (D.C. Cir. 2022) (same).

The parties agreed that Guidelines' calculation is as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2K2.1(a)(5) | Base Offense Level | 18 |
| | Total | 18 |

|  |  |  |
|---|---|---|
| U.S.S.G. §§3E1.1(a)(b) | Acceptance of Responsibility | -3 |
|  | Total | 15 |

The defendant has a Criminal History Category II, which results in a Guidelines' Sentencing Range of 21-27 months.

**VI.    The Section 3553(a) sentencing factors support imposition of a sentence within the Guidelines Sentencing range.**

The Court should next consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. That Section provides that the Court consider the following: (1) "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); (2) "the history and characteristics of the defendant," *id*.; (3) the promotion of "respect for the law," 18 U.S.C. § 3553(a)(2)(A); (4) general and specific "deterrence," 18 U.S.C. § 3553(a)(2)(B)(C); (5) the Guidelines and Guideline range, § 3553(a)(4); and (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As set forth below, these sentencing factors, as a whole, support the imposition of a sentence within the applicable Guidelines.

A.   **The Nature and Circumstances of the Offense**

The defendant has pleaded guilty to a possessing a very dangerous weapon – a machinegun. Specifically, the defendant possessed 35 MCDs.  *See* § VII, *infra* (noting danger to community presented by MCDs).   Among the MCDs were 21 drop-in AR auto sear-type MCDs in two sizes. The MCDs were 3-D printed, making them much harder to regulate.

The seriousness of this offense is reflected by the Sentencing Commission's rationale for a recent amendment:

> The Commission's amendment responds to concerns by the Department of Justice and other commenters about the proliferation of MCDs, which pose a heightened danger to the public because a weapon equipped with an MCD fires more rapidly and with less control than an identical weapon without an MCD. Of note, the Department of Justice pointed to a 570% rise in MCD recoveries in 2021 as compared to 2017 and to the growing involvement of automatic gunfire reported in shootings.  Commission data similarly reflects a recent rise in firearms cases involving MCDs.  In fiscal year 2023, 4.5 percent of cases sentenced under §2K2.1 involved an MCD—an increase from one percent of §2K2.1 cases in fiscal year 2019.  While most cases involving MCDs in fiscal year 2023 involved a single MCD, more than 18 percent involved four or more devices.

AMENDMENTS TO THE SENTENCING GUIDELINES, April 30, 2025, at 17Id. at 17-18.

B.   **Promotion of respect for the law**

Defendant's production of 35 MCDs and the attendant danger to the community support imposing a sentence within the Guidelines Sentencing range to promote respect for the law.  *See, e.g., Gall*, 552 U.S. at 54 (recognizing that "a lenient sentence for a serious offense threatens to promote disrespect for the law").

**C.	General and Specific Deterrence**

A sentence within the applicable sentencing range, a significant period of incarceration, would provide general deterrence by deterring others from engaging in similar criminal conduct involving machineguns would also specifically deter the defendant.

**D.	A Guidelines sentence is appropriate here.**

As set for the below, a Guidelines sentence would be reasonable, based on the circumstances of this case. A "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," *Rita v. United States,* 551 U.S. 338, 351, and it "may not presume that the Guidelines range is reasonable," *Gall*, 552 U.S. at 50; *Nelson v. United States*, 555 U.S. 350, 350 (2009), nevertheless "even in an advisory capacity the Guidelines serve as 'a meaningful benchmark' in the initial determination of a sentence and 'through the process of appellate review.'" *Rosales-Mireles v. United States*, 585 U.S. 129, 133 (2018).

The advisory Guidelines sentencing range should be given considerable weight. First, the Guidelines range is itself a § 3553(a) factor: "The fact that § 3553(a)[(4)] explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50, n.6. Second, one of the Sentencing Commission's purposes in promulgating the Guidelines was to "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2)." 28 U.S.C. §§ 991(b)(1)(A), 994(f). The Commission wrote the Guidelines to "carry out these same § 3553(a) objectives," resulting in "a set of Guidelines that seek to embody the § 3553(a) considerations, both in principle and in practice." *Rita*, 551 U.S.

338, 350.

Moreover, "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita*, 551 U.S. at 349. As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. § 1A1.1, intro, comment 3. More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. *See* 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case. Because they have been produced at Congress's direction, they cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005). "[W]here judge and Commission both determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that significantly increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347. In other words, "the Commission's recommendation of a sentencing range

will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

### E. Unwarranted sentencing disparities

As the D.C. Circuit has stated: "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024) (citation and internal quotation omitted); *see also United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (same). The defendant's co-defendant was recently sentenced to 21 months' incarceration, so a Guidelines Sentence would not be disparate.

## VII. Conclusion

Based on the gravity of the offense of conviction – particularly the possession of 35 MCDs, the Court should impose a sentence at the top of the Guidelines Sentencing range.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*John Crabb Jr.*
John Crabb Jr.
N.Y. Bar No. 2367670
Anthony Scarpelli
D.C. Bar No. 474711
601 D Street, N.W.
Washington, D.C. 20530
john.d.crabb@usdoj.gov
(202) 252-1794

9